**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAMES R. WISE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.:    12-01636 (RC) |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Defendant. | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I.  INTRODUCTION

Plaintiff James R. Wise had an accident in a stairwell in the Federal Reserve building in Washington, D.C on May 18, 2010. Claiming that a faulty stairwell handrail triggered his accident, Mr. Wise sued the United States for damages under the Federal Tort Claims Act. He charged the government with negligence, negligence per se, and gross negligence.

This Court concluded a three-day bench trial on March 16, 2015. The Court now makes its Findings of Fact and Conclusions of Law, as required under Federal Rule of Civil Procedure 52(a)(1). Any facts not expressly stated in the findings below are either immaterial or undisputed.

The Court finds that Mr. Wise failed to produce expert testimony at trial to prove the government's standard of care, as required by the District of Columbia's tort law. The Court also finds that Mr. Wise failed to prove the United States had actual or constructive notice of the faulty handrail. Both the lack of expert testimony and the government's lack of notice prevent Mr. Wise from holding the United States liable for his accident, and so the Court enters judgment in favor of the United States.

## II.  BACKGROUND

On May 18, 2010, Mr. Wise was employed as an electrician under contract with the federal government, and he was working at the Federal Reserve building at the intersection of 20th Street NW and C Street NW in Washington, D.C. Mar. 9, 2015 Trial Tr. 10:20–11:5, 124:21–125:6, ECF No. 42; Def.'s Ex. 18, at 1. That day, Mr. Wise had an accident in a stairwell and injured his neck and back. Mar. 9, 2015 Trial Tr. 13:6–11, 16:2–17:1; Def.'s Ex. 18, at 1. He received medical care for his injuries that evening at Anne Arundel Medical Center's emergency room in Annapolis, Maryland. *See* Mar. 9, 2015 Trial Tr. 30:6–31:7; Def.'s Exs. 1, 8. In the months following his accident, he also received medical care from Maryland Primary Care Physicians, physical therapy from Bayside Physical Therapy and Sports Rehabilitation, and pain management from the Kahan Center for Pain Management. *See* Mar. 9, 2015 Trial Tr. 35:17–37:5, 61:11–16; Pl.'s Ex. 3; Def.'s Exs. 2, 14.

Mr. Wise believed that a faulty stairwell handrail came loose and triggered his accident. Mar. 9, 2015 Trial Tr. 13:6–11. After filing an administrative claim with the Board of Governors of the Federal Reserve, Mr. Wise sued the United States in this Court under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2674. *See* Am. Compl. ¶¶ 1–4, ECF No. 13; Answer ¶ 4, ECF No. 8.[1] Mr. Wise claims that the government created a dangerous condition by allowing law enforcement officers to conduct a physical fitness test in the stairwell that weakened the

---

[1] Mr. Wise initially named the Federal Reserve Board as the sole defendant in his Complaint. *See* Compl. ¶ 6, ECF No. 1. But "the United States is the only proper party defendant" in an FTCA action. *Welsh v. Hagler*, 83 F. Supp. 3d 212, 223 (D.D.C. 2015) (quoting *Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 25 n.4 (D.D.C. 2004)). Mr. Wise therefore amended his Complaint to name the United States as defendant. *See* Am. Compl. 1 (naming the United States as the defendant in the caption).

The Court presumes that when the parties later refer to the Federal Reserve Board as the defendant in this case, they do so unintentionally. *See, e.g.*, Am. Compl. ¶ 6; Mar. 9, 2015 Trial Tr. 4:10–18.

2

stairwell handrails over time. Mar. 16, 2015 Trial Tr. 56:21–65:8, ECF No. 44. Mr. Wise

therefore contends that the government had a duty to inspect the stairwell handrails at least twice

a year, and that the government was negligent when it failed to do so. Am. Compl. ¶¶ 17–18;

Mar. 16, 2015 Trial Tr. 65:12–17; Pl.'s Proposed Findings of Fact & Conclusions of Law

¶¶ 12–15, ECF No. 38.

      The government denies any negligence. It takes the position that Mr. Wise slipped, but

the stairwell handrail was not the cause. Mar. 16, 2015 Trial Tr. 75:20–22. The United States

also contends that its law enforcement officers were not using that particular handrail for their

physical fitness test in the time around Mr. Wise's accident, and that the government did not

receive notice of any handrail defects before Mr. Wise's accident *Id.* at 79:11–80:5; Def.'s

Proposed Findings of Fact & Conclusions of Law 34–36, ECF No. 45. Therefore, the

government argues, Mr. Wise's negligence claims must be dismissed. Def.'s Proposed Findings

of Fact & Conclusions of Law 35–36.

      This Court conducted a three-day bench trial on March 9, March 10, and March 16, 2015.

The Court heard testimony from Mr. Wise, from persons employed at the Federal Reserve

building at the time of Mr. Wise's accident, and from doctors who evaluated Mr. Wise's injuries.

The Court finds that the government lacked notice of any problems with the stairwell handrail

before Mr. Wise's accident, and that Mr. Wise has failed to produce expert testimony required to

establish the appropriate standard of care for installing and subsequently inspecting handrails

under these circumstances. Because both of these things are prerequisites to establishing

negligence liability in this case, the Court finds that the United States is not liable to Mr. Wise

for his accident, for his injuries, or for his subsequent medical care.

## III. STANDARD OF REVIEW

In an action tried without a jury, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "But the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." Fed. R. Civ. P. 52(a) advisory committee's note to 1946 amendment; *accord Caffey v. Togo*, No. 97-5092, 1998 WL 230269, at *2 (D.C. Cir. Feb. 9, 1998); *Moore v. Hartman*, No. 92-2288, 2015 WL 1812852, at *15 (D.D.C. Apr. 17, 2015). Therefore, the Court need not address all the evidence presented at trial, and must simply make findings sufficient to allow the appellate court to conduct a meaningful review. *Caffey*, 1998 WL 230269, at *2; *Hurwitz v. Hurwitz*, 136 F.2d 796, 799 (D.C. Cir. 1943); *Moore*, 2015 WL 1812852, at *15.

The Court's findings and conclusions "may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). On appellate review, findings of fact "must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(6).

## IV. FINDINGS OF FACT

### A. Stairwell 6 in the Federal Reserve Building

1.  The Federal Reserve building in Washington, D.C. is located at the corner of C Street NW and 20th Street NW. *See* Mar. 9, 2015 Trial Tr. 10:25–11:5; Def.'s Ex. 18.

2.  The Federal Reserve building has a stairwell, Stairwell 6, which includes a span of stairs connecting two basement floors, Floors 2-G and 3-G. Mar. 9, 2015 Trial Tr. 126:1–10; Def.'s Ex. 21.

3.  Floor 2-G, also known as the "concourse" level, is the second garage level of the Federal Reserve building. Mar. 9, 2015 Trial Tr. 126:8–10.

4.      Floor 3-G, also known as the "plant" level, is the third garage level of the Federal Reserve building. *Id.* at 126:5–8, 163:25–164:1.

5.      Floor 2-G is one floor above Floor 3-G. *Id.* at 126:5–10.

6.      Because Stairwell 6 is the only stairwell that descends to Floor 3-G, Stairwell 6 receives frequent foot traffic. *Id.* at 134:23–24, 135:4–5; Def.'s Ex. 21.

7.      Stairwell 6 contains eight stair steps between Floor G-2 and the midlevel landing between Floors G-2 and G-3. Mar. 9, 2015 Trial Tr. 15:6; *see also id.* at 17:6–19:15; Pl.'s Ex. 1-A; Def.'s Ex. 21.

8.      On May 18, 2010, Stairwell 6 had a handrail attached to the wall on the left side of the stairs. Mar. 9, 2015 Trial Tr. 12:24–13:2.

9.      Three bolts, located at the top, middle, and bottom of the handrail, attached the handrail to the wall. *See id.* at 16:19–21, 21:10–24; Def.'s Ex. 18, at 2, 3.

10.     The top and bottom bolts attaching the handrail to the wall were toggle bolts. Mar. 9, 2015 Trial Tr. 21:10–24, 90:1–6.

11.     The Federal Reserve's building operations supervisors and its manager of design and construction had not received any complaints about, or had any problems with, stairwell handrails in the building, even though at trial each employee had worked at the Federal Reserve building for more than ten years. Mar. 9, 2015 Trial Tr. 99:4–18, 106:17–107:18, 112:12–20, 128:23–129:1; *see also id.* at 93:8–24, 109:4–22, 112:18–20, 117:6–7, 118:3–4 (describing the employees' roles and tenures at the Federal Reserve building). Plaintiff has not provided any evidence of any such prior complaints.[2]

---

[2] Mr. Wise attempted to establish at trial that the handrail may have come loose and been repaired in the past. *See* Mar. 9, 2015 Trial Tr. 77:9–20 (opining, in a statement from Mr. Wise's

12.     The Federal Reserve building's stairwell handrails have not been repaired since they were constructed. *Id.* at 127:11–24.

### B. Stairwell Inspections and Stair Climbing Tests

13.     The Federal Reserve building's law enforcement unit (LEU) had more than 100 members in May 2010. Mar. 9, 2015 Trial Tr. 141:6–16; Mar. 10, 2015 Trial Tr. 9:21–10:3, ECF No. 43.

14.     At the time, the LEU patrolled the stairwells twice daily to look for hazards and safety concerns. Mar. 9, 2015 Trial Tr. 145:15–25; Mar. 10, 2015 Trial Tr. 9:11–13.

15.     For a period of time before May 2010, the LEU conducted "stair climbing tests" within the stairwells once or twice a year. Mar. 9, 2015 Trial Tr. 115:2–116:1, 127:25–128:16, 143:12–25, 144:10–13, 146:16–21; Mar. 10, 2015 Trial Tr. 13:14–14:1; Def.'s Exs. 22, 23.

16.     During each stair climbing test, all the LEU members climbed stairs to reach the penthouse level of the Federal Reserve Building. Mar. 9, 2015 Trial Tr. 143:22–23, 145:8–11, 146:12–21; Def.'s Exs. 22, 23.

17.     Members of the LEU were allowed to use the stairwell handrails while performing the stair climbing test. Mar. 9, 2015 Trial Tr. 143:22–25, 145:12–14.

---

supervisor at the time of the accident, that "along the wall you could see where patches were in the plaster [where] maybe this [the handrail coming loose] might have happened in the past").

The Court does not find this testimony persuasive. It is contradicted by the testimonies of Federal Reserve building employees who deny any problems with the handrail for at least ten years before Mr. Wise's accident. *See id.* at 99:4–18, 106:17–107:18, 112:12–20, 128:23–129:1; *see also id.* at 93:8–24, 109:4–22, 112:18–20, 117:6–7, 118:3–4 (describing the employees' roles and tenures at the Federal Reserve building). And to the extent that pictures of the stairwell Mr. Wise produced show patches in the plaster, those pictures date from after the accident. *See id.* at 18:7–9 (noting that Mr. Wise's pictures, entered into evidence as Plaintiff's Exhibit 1, A–K, were taken "after the accident, maybe two days afterwards"). Thus, any wall damage shown in the pictures could reflect the handrail's removal and repair *after* Mr. Wise's accident, and not problems with the handrail before his accident.

18.     Although the stair climbing test previously began on Floor 3-G in Stairwell 6, the test did not start on Floor 3-G in 2010. Mar. 9, 2015 Trial Tr. 139:23–140:9; Mar. 10, 2015 Trial Tr. 7:20–8:15; Def.'s Ex. 23, at 1.

### C.  Mr. Wise's Accident

19.     Plaintiff James Robert Wise is a citizen and resident of Maryland. Mar. 9, 2015 Trial Tr. 9:16–17.

20.     Mr. Wise is an electrician by training. *Id.* at 10:14–18.

21.     On May 18, 2010, Mr. Wise was employed by Power Services, Inc., as a subforeman. *Id.* at 10:20–22.

22.     That day, Mr. Wise was working under contract at the Federal Reserve building, located at the corner of C Street NW and 20th Street NW in Washington, D.C. *Id.* at 10:25–11:5, 124:24–125:13; Def.'s Ex. 18.

23.     Mr. Wise was working a ten-hour shift beginning at 6:00 PM. Mar. 9, 2015 Trial Tr. 32:10–15.

24.     Between 9:54 PM and 9:58 PM on May 18, 2010, Mr. Wise entered Stairwell 6 on Floor 2-G to go down the stairs to Floor 3-G. *Id.* at 12:14–20, 125:20-22, 126:10–11, 164:3–165:10; Def.'s Ex. 12, at 9.

25.     While he was still on the Floor 2-G landing, Mr. Wise placed his left hand on the handrail attached to the left side of the stairwell. Mar. 9, 2015 Trial Tr. 12:24–13:7, 15:7–17.

26.     At the time, Mr. Wise weighed around 240 or 250 pounds. *Id.* at 13:23–24.

27.     Mr. Wise testified that he put about ten percent of his body weight on the handrail and began going down the stairs. *Id.* at 13:6–22.

28.     As Mr. Wise took his first step down the stairs, he stumbled and held on to the handrail to pull himself upright. *Id.* at 13:10, 15:17–22.

29.     At that point, although the handrail was still connected to the wall, the top bolt was loose. *Id.* at 15:23–24, 156:12–24.

30.     After Mr. Wise stumbled, he slid down the eight stairs to the landing below him. *Id.* at 13:10–11, 15:4–6, 16:11–12, 27:24–28:2, 28:7.

31.     After his accident, Mr. Wise felt pain in his neck and lower back. *Id.* at 16:11–13, 28:6–7, 29:10–16, 75:11–12.

32.     No one else was in the stairwell during Mr. Wise's accident. *Id.* at 44:16–18.

### D.  Mr. Wise After His Accident

33.     After his accident, Mr. Wise walked down some more stairs to go to the electrical room. *Id.* at 16:22–23, 28:19–24.

34.     Mr. Wise then reported the incident to Bill Bucco, his supervisor at the time, and Scott Simons, a member of the LEU. *Id.* at 29:17–24, 74:23–75:4, 141:6–142:15.

35.     Mr. Wise did not complete his shift that day; he went to a hospital instead. *Id.* at 30:6–9, 75:3–4.

36.     Mr. Bucco asked Mr. Wise whether Mr. Wise would like a ride to the hospital, but Mr. Wise declined the offer. *Id.* at 75:13–17.

37.     Mr. Simons asked Mr. Wise whether he would like an ambulance to a hospital, but Mr. Wise declined that offer as well. *Id.* at 30:12–20.

### E.  Mr. Wise's Medical Care After His Accident

38.     Mr. Wise drove his own car to Anne Arundel Medical Center and reported to the emergency room there. *Id.* at 30:6–31:7; Def.'s Ex. 1.

39.     When he arrived at the emergency room, Mr. Wise continued to feel pain in his neck and lower back, as well as down the back of his left leg. Mar. 9, 2015 Trial Tr. 31:13–23.

40.     Mr. Wise left the emergency room a couple of hours later and drove home. *Id.* at 32:2–9.

41.     In the months following his accident, Mr. Wise received medical care from Maryland Primary Care Physicians, physical therapy from Bayside Physical Therapy and Sports Rehabilitation, and pain management from the Kahan Center for Pain Management. *See id.* at 35:17–37:5, 61:11–16; Pl.'s Ex. 3; Def.'s Exs. 2, 14.

### F.  Stairwell 6 After Mr. Wise's Accident

42.     Michael Marx, an engineer employed at the Federal Reserve building, removed the damaged Stairwell 6 handrail after Mr. Wise's accident. Mar. 9, 2015 Trial Tr. 56:8–11, 88:15–20; Def.'s Ex. 18.

43.     The Federal Reserve building's lead carpenter Russell Jones reinstalled the handrail the day after Mr. Wise's accident, on May 19, 2010. *Id.* at 19:21–20:13, 95:20–21; Pl.'s Ex. 1-B.

44.     When Mr. Jones reinstalled the handrail in Stairwell 6, he adjusted the top and bottom toggle bolts' positions to preserve structural integrity, so that the two toggle bolts met the wall at some distance away from their prior positions. Mar. 9, 2015 Trial Tr. 95:22–96:3, 98:7–16.

## V.  CONCLUSIONS OF LAW

The Federal Tort Claims Act (FTCA) is a limited waiver of sovereign immunity that makes the federal government liable to the same extent as a private individual for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. §§ 1346, 2674; *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA provides the

exclusive remedy "[w]here a plaintiff seeks monetary damages against a federal agency for torts committed by federal employees." *Lempert v. Rice*, 956 F. Supp. 2d 17, 28 (D.D.C. 2013) (alteration in original) (quoting *Jones v. United States*, 949 F. Supp. 2d 50, 53 (D.D.C. 2013)); *see* 28 U.S.C. § 2679(b)(1) (declaring the FTCA remedy "exclusive of any other civil action or proceeding for money damages"). A court adjudicating FTCA claims applies "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Girdler v. United States*, 923 F. Supp. 2d 168, 186 (D.D.C. 2013) (confirming that the FTCA incorporates state tort law).

Here, the Federal Reserve Board is a federal agency for FTCA purposes. *See* 28 U.S.C. § 2671 (defining "Federal agency" for FTCA purposes to include "the executive departments" and "independent establishments of the United States"). Mr. Wise's complaint therefore seeks relief under the FTCA to obtain monetary damages from the federal government.

Mr. Wise's Complaint charges the federal government with negligence, negligence per se, and gross negligence. Am. Compl. ¶¶ 15–48. Because Mr. Wise's accident occurred in the District of Columbia, the Court applies the District's tort law to adjudicate Mr. Wise's claims. *See* Mar. 9, 2015 Trial Tr. 10:25–11:5 (reporting that Mr. Wise was in the Federal Reserve building, located in Washington, D.C., on the day of his accident); Def.'s Ex. 18, at 1 (same). The Court addresses each claim in turn.

## A.  Negligence

To prove negligence under the District of Columbia's tort law, "a plaintiff must show that '(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff.'" *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008) (quoting *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994)); *accord Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 354 (D.C. 2015) (quoting

*Tolu*, 945 A.2d at 601); *D.C. Hous. Auth. v. Pinckney*, 970 A.2d 854, 864 (D.C. 2009) (using the term "standard of care" instead of "duty of care"). Here, Mr. Wise did not show that the United States owed a duty of care, and so his negligence case fails.

"In the District of Columbia the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his premises is reasonable care under all of the circumstances." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014); *accord D.C. Hous. Auth.*, 970 A.2d at 866. To prove the standard of care, however, the District of Columbia's tort law often requires the plaintiff to produce expert testimony. *See, e.g.*, *Night & Day Mgmt.*, 101 A.3d at 1038–39. And, when negligence is predicated on a dangerous condition, the plaintiff must show that the defendant had actual or constructive notice of the dangerous condition. *See Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015); *Croce v. Hall*, 657 A.2d 307, 310–11 (D.C. 1995).

### 1.   Expert Testimony

When the standard of care is "so distinctly related to some science, profession or occupation as to be beyond the ken of the average lay juror," the plaintiff must prove the standard of care with expert testimony. *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (quoting *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008)). But if the alleged negligence occurred in a context "within the realm of common knowledge and everyday experience," expert testimony is not required. *Id.* at 1038–39 (quoting *Tolu*, 945 A.2d at 601).

The District of Columbia Court of Appeals has explained that expert testimony is required in cases involving "issues of safety, security and crime prevention." *Id.* at 1039 (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006)). Thus the court has obliged plaintiffs to produce expert testimony to prove the standard of care for negligence claims

involving maintenance of a municipality's dead and leaning tree that could fall on a house, *see Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000); maintenance of a municipality's water main pipe that could rupture, *see District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433–34 (D.C. 2000); the tightness of handcuffs, *see Tillman v. WMATA*, 695 A.2d 94, 97 (D.C. 1997); cushioning of the ground around playground monkey bars from which a child could fall, *see Messina v. District of Columbia*, 663 A.2d 535, 538–40 (D.C. 1995); and maintenance of street lights from which light globes could fall, *see Rajabi v. Potomac Elec. Power Co.*, 650 A.2d 1319, 1322–23 (D.C. 1994).

When negligence cases implicate safety issues but the D.C. Court of Appeals holds expert testimony unnecessary, the cases tend to arise from facts showing an obvious hazard. These include claims arising from, for instance, "a large, uncovered vent in the wall of a parking garage" through which a child could fall, *see Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 75 (D.C. 2015); "a gap of six to seven inches between boards" covering a large trench into which a pedestrian could fall, *see Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425–26 (D.C. 2000); a hole in a playground slide where a child's fingers could get caught, *see District of Columbia v. Shannon*, 696 A.2d 1359, 1365–66 (D.C. 1997); and an abandoned tank of used motor oil that could spark a fire, *see Jimenez v. Hawk*, 683 A.2d 457, 462–63 (D.C. 1996).

Mr. Wise's case falls into the first category of cases. Because Mr. Wise has alleged two possible breaches of the standard of care—one relating to how the Stairwell 6 handrail was installed on the wall, *see* Mar. 16, 2015 Trial Tr. 58:25–59:2, 59:18–19, and the other relating to the government's alleged failure to inspect the handrail, *see id.* at 61:21–62:5—the Court addresses the expert testimony requirement for each allegation separately. Mr. Wise should have produced expert testimony to prove the standard of care for each alleged breach. Because he did

not produce expert testimony for either allegation, he cannot establish the first element of his negligence claims, and those claims cannot prevail.

*a. Handrail Installation*

Mr. Wise contends first that the government breached its duty of care by fastening the Stairwell 6 handrail to the wall with a toggle bolt and "thin, rusty" metal lathe. *See* Mar. 16, 2015 Trial Tr. 58:25–59:2, 59:16–19; *see also* Mar. 9, 2015 Trial Tr. 42:21–23, 132:2–13; Pl.'s Ex. 1-I (describing and depicting metal lathe and how it, working with a toggle bolt, can connect a stairwell handrail to wall plaster). Because handrail installation is an issue of safety, it triggers the presumption that expert testimony is required to establish the standard of care. *See Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) ("[E]xpert testimony is required to establish the standard of care in negligence cases that involve 'issues of safety . . . .'" (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006))).

Determining whether a stairwell handrail was installed correctly is also "distinctly related" to the construction professions. *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 75 (D.C. 2015) ("Expert testimony is required . . . where the subject is so distinctly related to some science, profession, or occupation . . . as to be beyond the ken of the average layperson." (quoting *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988)) (internal quotation marks omitted)); *see* Mar. 9, 2015 Trial Tr. 24:25–25:19, 80:3–8 (drawing on Mr. Bucco and Mr. Wise's construction experience to justify their claims about proper handrail installation). The standard of care for handrail installations was therefore "beyond the ken of the average layperson" and a matter for which expert testimony was required. *Destefano*, 121 A.3d at 75.

Mr. Wise did not satisfy that requirement. To begin with, Mr. Wise did not designate any expert witnesses to testify on the standard of care for handrail installation. *See* Am. Joint Pretrial

Statement 2–3, ECF No. 33. This fact alone is key, for offering expert testimony without disclosing or designating it as such can result in surprise and prejudice to the other party. *See Heller v. District of Columbia*, 801 F.3d 264, 270 (D.C. Cir. 2015) (explaining how one party's failure to disclose expert witnesses can unfairly surprise the opposing party); *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 71 (D.D.C. 2014) ("[A] court must determine an appropriate response to avoid the prejudice and surprise that can result from the offering of expert medical testimony without the requisite disclosures.").

The only evidence Mr. Wise produced relating to the standard of care for handrail installation was lay testimony offered by Mr. Wise and his supervisor Mr. Bucco. Both Mr. Wise and Mr. Bucco opined briefly that toggle bolts should not have been used to secure the stairwell handrail. *See* Mar. 9, 2015 Trial Tr. 21:22–24 (explaining that toggle bolts are used instead "to support pictures, light bookcases"); *id.* at 80:6–8 ("[A] toggle bolt type anchor is not the correct way to install a handrail."); *id.* at 83:19–21 ("I don't think I have ever seen a toggle bolt used for a handrail."). But though Mr. Wise and his supervisor Mr. Bucco claim to have the construction experience and experience with handrail installations to be deemed experts in this case, *see id.* at 9:23–10:18, 24:25–25:15, 73:2–19, 80:3–5, their testimony does not fulfill the requirements for expert opinion testimony under District of Columbia law.

The District's tort law, "at the very least," requires the expert to specify "what standards were violated and how they were violated." *Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 358 (D.C. 2015) (quoting *District of Columbia v. Carmichael*, 477 A.2d 312, 315 (D.C. 1990)). "Generalized references" to standards of care are insufficient. *Id.* (citing *Briggs v. WMATA*, 481 F.3d 839, 846 (D.C. Cir. 2007)). And an expert may not simply render an opinion "as to what he or she would do under similar circumstances." *Briggs*, 481 F.3d at 846 (quoting *Clark v. District*

14

*of Columbia*, 708 A.2d 632, 635 (D.C. 1997)). Instead, the expert must "clearly relate the standard of care to the practices in fact generally followed by other comparable governmental facilities or to some standard nationally recognized by such units." *Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000).

Mr. Wise and Mr. Bucco's testimony does not meet those requirements. Their testimony merely declares that toggle bolts are not appropriate for handrail installations, but it does not offer an appropriate alternative. *See* Mar. 9, 2015 Trial Tr. 21:22–24, 80:3–8, 83:19–21. And in opining that toggle bolts are not appropriate, Mr. Wise and Mr. Bucco reference only their prior experience, not any national standard of care that was violated. *See id.* at 24:25–25:15 ("I have worked in staircases before they've been finished."); 83:19–21 ("I can only tell you what I see on the jobs . . . ."). What is more, their testimony contradicts other witnesses' testimonies, which asserted, conversely, that toggle bolts are routinely used to secure stairwell handrails. *See id.* at 96:12–97:2, 98:17–24.[3] This leaves the Court with only general and contested statements about the standard of care for handrail installation, based solely on Mr. Wise's and Mr. Bucco's experience in construction. Because "considerable speculation" is necessary to decide the standard of care in these circumstances, Mr. Wise has not met his burden to prove the standard of care for handrail installation. *Tillman v. WMATA*, 695 A.2d 94, 97 (D.C. 1997). His negligent installation claim thus cannot go forward.

---

[3] In addition, Mr. Wise's and Mr. Bucco's testimony, given its cursory discussion of the correct way to secure a handrail to a wall, almost certainly does not satisfy the requirements for expert opinion testimony under Federal Rule of Evidence 702. *See* Fed. R. Evid. 702 (requiring expert testimony to have a basis in "sufficient facts or data," to be "the product of reliable principles and methods," and to result from the expert "reliably appl[ying] the principles and methods to the facts of the case").

*b. Handrail Inspections*

As for Mr. Wise's allegation that the government breached its duty to inspect the Stairwell 6 handrail, Mr. Wise offered no evidence—expert or otherwise—about the standard of care for an inspection. Instead, when he alleged that "the standard of care would have been to inspect [the stairwell handrail] at least twice a year," he referred only to his counsel's "reasonableness as a prudent person." Mar. 16, 2015 Trial. Tr. 65:12–20. Because he did not provide any evidence of the standard of care for this claim, Mr. Wise's failure-to-inspect claim is, like his negligent installation claim, lost.

As with handrail installation, expert testimony was required to establish the standard of care for handrail inspections. Given that no problems concerning the Stairwell 6 handrail were reported to or observed by the Federal Reserve building's staff in at least the last ten years, the stairwell handrail was unremarkable and ordinary in the time before Mr. Wise's accident. *See* Mar. 9, 2015 Trial Tr. 99:4–18, 106:17–107:18, 112:12–20, 128:23–129:1 (denying knowledge of any problems or complaints concerning the stairwell handrail); *see also id.* at 93:8–24, 109:4–22, 112:18–20, 117:6–7, 118:3–4 (describing the testifying employees' roles and tenures at the Federal Reserve building).

Thus, in contrast to cases where the District of Columbia Court of Appeals did not require expert testimony, the Stairwell 6 handrail here was not such an obvious hazard that "common sense and everyday experience" would allow the factfinder to infer negligence. *Jimenez v. Hawk*, 683 A.2d 457, 462 (D.C. 1996); *see, e.g.*, *Destefano v. Nat'l Children's Med. Ctr.*, 121 A.3d 59, 75 (D.C. 2015) (holding expert testimony unnecessary to prove negligence involving a large, uncovered parking garage vent); *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425–26 (D.C. 2000) (same, for gap-ridden boards covering a trench); *District of Columbia*

*v. Shannon*, 696 A.2d 1359, 1365–66 (D.C. 1997) (same, for a playground slide's hole); *Jimenez*, 683 A.2d at 462–63 (same, for abandoned motor oil). Instead, if the handrail was a hazard, it was at most an inconspicuous one, akin to those for which the D.C. Court of Appeals required expert testimony to prove the standard of care. *See, e.g.*, *Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000) (requiring expert testimony to prove the standard of care for maintenance of a dead and leaning tree); *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433–34 (D.C. 2000) (same, for a water main pipe); *Messina v. District of Columbia*, 663 A.2d 535, 538–40 (D.C. 1995) (same, for playground cushioning); *Rajabi v. Potomac Elec. Power Co.*, 650 A.2d 1319, 1322–23 (D.C. 1994) (same, for street lights). Mr. Wise was therefore obligated to put on expert testimony at trial to establish the standard of care in this case.

Mr. Wise has altogether failed to meet that burden. Mr. Wise offered no evidence at trial, nor any expert testimony, to establish the standard of care for handrail inspections. *See* Mar. 16, 2015 Trial. Tr. 65:12–20 (offering only Mr. Wise's counsel's "reasonableness as a prudent person" as the basis for the standard of care). Nor did Mr. Wise establish what, if anything, was deficient about the LEU's stairwell inspections, which were performed twice daily at the time of Mr. Wise's accident. *See* Mar. 9, 2015 Trial Tr. 145:15–146:3 ("[The LEU] would walk through the stairwells to see if there was . . . any type of hazard or safety concern."); Mar. 10, 2015 Trial Tr. 9:11–13 ("[E]ach stairwell gets checked in the morning and evening, at a minimum."). If the standard of care required more from the government than the LEU's daily visual inspections (*e.g.*, application of pressure to the handrail), Mr. Wise has neither specified what else was required, nor has he produced expert testimony to substantiate his allegations with reference to a national standard of care. *See Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000); *cf*. Mar. 16, 2015 Trial Tr. 65:21–66:19 (offering neither expert testimony for Mr. Wise's

assertion that a prudent person "would at least test those rails," nor details about what such a test

would look like or the frequency required). Thus Mr. Wise's failure-to-inspect claim, like his

negligent installation claim, cannot proceed. On both his allegations against the government, Mr.

Wise has "failed to carry his burden for negligence." *See Katkish*, 763 A.2d at 706.

## 2.  Notice

The Court turns now to the notice requirement. To establish negligence predicated on the

existence of a dangerous condition, the plaintiff must show that the defendant had actual or

constructive notice of the dangerous condition. *Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d

347, 356 (D.C. 2015); *Croce v. Hall*, 657 A.2d 307, 311 (D.C. 1995). The notice requirement

exists in tandem with the general rule that "the applicable standard for determining whether an

owner or occupier of land has exercised the proper level of care . . . is reasonable care under all

of the circumstances." *See Croce v. Hall*, 657 A.2d 307, 310 (D.C. 1995) (articulating first the

general rule, then the more specific rule that, "to recover for injuries resulting from a *hazard* in a

common area, the plaintiff must show that the [landowner] had actual or constructive notice of a

dangerous condition he failed to correct" (emphasis added)). Here, because Mr. Wise did not

show that the United States had actual or constructive notice of the allegedly defective handrail,

he cannot prove that the United States owed him a duty of care.

### a.  No Actual Notice

The record here does not show that the United States ever had actual notice of a defective

handrail in Stairwell 6. Stairwell 6 receives frequent foot traffic, and the Federal Reserve

building's law enforcement unit (LEU) inspects it twice daily. *See* Mar. 9, 2015 Trial Tr.

134:23–24, 145:14–25; Mar. 10, 2015 Trial Tr. 9:11–13. Given Stairwell 6's frequent use and

the daily inspections, any problems with the stairwell handrails would have been reported to

building employees as soon as they were noticed. *See* Mar. 9, 2015 Trial Tr. 104:25–105:15, 107:2–18 (explaining, in the statement of the lead carpenter at the time of Mr. Wise's accident, that the building services office receives "notices" and "a work order" as soon as a complaint is filed relating to the building's electrical structures, carpentry, painting plumbing, temperature, and the like). Yet, government employees responsible for building maintenance had not received any complaints about, nor had any problems with, stairwell handrails in the building, despite each having worked at the Federal Reserve building for more than ten years. *See id.* at 99:4–18, 106:17–107:18, 112:12–20, 128:23–129:1. Furthermore, both Mr. Wise and his supervisor Mr. Bucco had used Stairwell 6 regularly, and they did not notice anything amiss with the handrail until the day of Mr. Wise's accident. *See id.* at 53:23–54:1, 76:7–11 (describing how Mr. Wise and Mr. Bucco had both used Stairwell 6 before); *id.* at 54:2–4, 77:9–10 (describing how neither Mr. Wise nor Mr. Bucco had noticed anything amiss with the handrail).

The record reveals, in sum, that the government lacked actual notice of any problems with the Stairwell 6 handrail. Thus, Mr. Wise's only hope is to show that the United States had constructive notice of a defective handrail.

### b. *No Constructive Notice*

Under District of Columbia law, a defendant has constructive notice of a dangerous condition when "the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected." *Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015) (quoting *Anderson v. Woodward & Lothrop*, 244 A.2d 918, 918–19 (D.C. 1968) (per curiam)); *accord Wilson v. WMATA*, 912 A.2d 1186, 1190 (D.C. 2006). Put another way, to prove constructive notice, "a plaintiff must present evidence: (1) that a dangerous condition existed, and (2) that the dangerous condition existed for

such a duration of time that the [defendant] should have been aware of it if [it] had exercised reasonable care." *Lynn v. District of Columbia*, 734 A.2d 168, 171 (D.C. 1999) (citations omitted).

Thus, constructive notice "is usually found through the continuance of the condition for an unreasonable period of time." *Croce v. Hall*, 657 A.2d 307, 311–12 (D.C. 1995). Proving the duration of time that an alleged hazard existed is a "critical" and "important" factor needed to establish constructive notice. *Wilson v. WMATA*, 912 A.2d 1186, 1190–91 (D.C. 2006); *accord Mixon v. WMATA*, 959 A.2d 55, 60 (D.C. 2008) (citing *Wilson*). When the plaintiff proves only that a hazard existed for an undetermined period of time, she has not shown that the defendant had constructive notice. *Wilson*, 912 A.2d at 1190 (citing *Smith v. Safeway Stores, Inc.*, 298 A.2d 214, 217 (D.C. 1972)).

Here, Mr. Wise has failed to present evidence of the threshold requirement for constructive notice: that a dangerous condition existed in the first place. *See Lynn v. District of Columbia*, 734 A.2d 168, 171 (D.C. 1999) ("[A] plaintiff must present evidence . . . that a dangerous condition existed . . . ."). Apart from speculation that the Stairwell 6 handrail may have had a problem before, *see* Mar. 9, 2015 Trial Tr. 77:14–20, nothing in the record indicates that the handrail was loose or defective at any point before the day of Mr. Wise's accident. By the year 2010, the LEU's stair climbing test no longer took place within Stairwell 6. *See id.* at 144:19–145:7 (indicating that stairwell use for the test ceased around 2010); Mar. 10, 2015 Trial Tr. 19:1–5, 21:12–19 (indicating that stairwell use for the test ceased in 2007). At that time—and up to the day of Mr. Wise's accident—people regularly used Stairwell 6 without reporting any looseness in the handrail. *See* Mar. 9, 2015 Trial Tr. 134:23–24 (noting that Stairwell 6 "has a lot of traffic in it"); *id.* at 99:4–18, 106:17–107:18, 112:12–20, 128:23–129:1 (detailing how

building employees received no reports of problems with the handrails). And, as noted above, even Mr. Wise and Mr. Bucco did not notice any problems with the Stairwell 6 handrail until the day of Mr. Wise's accident. *See* Mar. 9, 2015 Trial Tr. 54:2–4, 77:9–10. On this record, there is no evidence that the handrail ever created a dangerous condition for constructive notice.

Even if the Court were to infer that the law enforcement unit (LEU)'s stair climbing test created the dangerous condition required for constructive notice, Mr. Wise can show only that a weakened stairwell handrail existed on the day of the accident and possibly for an undetermined period of time before that date. The record does not establish a clear beginning or end for when the LEU's stair climbing test took place in Stairwell 6. *See* Mar. 9, 2015 Trial Tr. 54:2–4, 77:9–10, 115:2–15, 127:25–128:16, 143:12–25, 144:10–13, 144:19–145:7, 146:16–21; Mar. 10, 2015 Trial Tr. 7:20–8:15, 13:14–14:1, 19:1–5, 21:12–19. Moreover, the record does not establish a clear beginning or end for when the stair climbing test took place on the actual span of stairs where Mr. Wise slipped—though, by all accounts it did not include that span of stairs by the year 2010. *See* Mar. 9, 2015 Trial Tr. 139:23–140:9; Mar. 10, 2015 Trial Tr. 7:20–8:15; Def.'s Ex. 23, at 1. In short, the record shows only an undetermined period of time during which the government could be charged with constructive notice of weakened handrails resulting from the LEU's stair climbing test. Such an amorphous period of time is insufficient to prove constructive notice. *See Mixon v. WMATA*, 959 A.2d 55, 60 (D.C. 2008) (explaining that, when the factfinder must resort to "sheer guesswork" to determine the length of time the hazard existed, the plaintiff failed to show enough evidence to permit the factfinder to impute constructive knowledge to the defendant).

Mr. Wise also cannot claim that constructive notice existed because, if the Federal Reserve building's staff had fulfilled their duty of care and inspected the handrail "at least twice

a year following one of the [stair climbing] tests," the government would have known that the handrail was a hazard. *See* Mar. 16, 2015 Trial Tr. 65:13–14. This line of reasoning overlooks the first prong of the District of Columbia's constructive notice formulation, which requires the plaintiff to prove that a dangerous condition existed in the first place. *See Lynn v. District of Columbia*, 734 A.2d 168, 171 (D.C. 1999). Mr. Wise cannot argue that an inspection *would have* revealed a problem; doing so invites this Court to engage in the kind of speculation that the District of Columbia Court of Appeals has discouraged in the constructive notice context. For instance, that court has held that the failure to prove how long a hazard existed meant that the factfinder "would have had to engage in sheer guesswork" to determine whether it existed for long enough to charge the defendant with constructive notice. *Mixon v. WMATA*, 959 A.2d 55, 60 (D.C. 2008). So too here, if the Court does not even know whether the Stairwell 6 handrail was defective, it can only guess whether a defective handrail existed for long enough to charge the government with constructive notice. Without proof of a dangerous condition, the government cannot be charged with constructive notice, even if it breached an alleged duty to inspect.

Mr. Wise's failure to produce expert testimony also destroys his argument here. Even if the Court could infer constructive notice from a failure to inspect the handrail, Mr. Wise must prove the government's duty of care with expert testimony. *See supra* Part V.A.1.b. Because Mr. Wise did not, he cannot establish constructive notice by relying on the government's breach of its alleged duty to inspect the handrail.

Because Mr. Wise cannot show that the government had actual or constructive notice of a defective handrail, his negligence claims against the United States cannot prevail. *See Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015); *Croce v. Hall*, 657 A.2d 307, 311

(D.C. 1995).[4] Both Mr. Wise's failure to produce expert testimony and his failure to prove notice defeat his negligence claims.

## B.  Negligence *Per Se*

Mr. Wise also seeks relief on a negligence *per se* theory. *See* Am. Compl. ¶¶ 25–37; Mar. 16, 2015 Trial Tr. 66:16–17. "To prevail on a negligence *per se* theory, the plaintiff may, in certain circumstances and under specified conditions[,] rely on a statute or regulation as proof of the applicable standard of care." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (alteration in original) (quoting *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997)).

Mr. Wise concedes that he has offered no evidence from the District of Columbia Code to substantiate his claim. Mar. 16, 2015 Trial Tr. 66:17–18. Nor does the record cite any specific statute or regulation that the government breached. *See* Mar. 9, 2015 Trial Tr. 83:13–24, 100:24–101:10, 110:22–111:5, 121:9–122:4; *cf. id.* at 129:2–130:12 (explaining how the Federal Reserve building was built to conform with the 1961 building code). Without a statute or regulation to prove a standard of care, Mr. Wise cannot establish the government's liability for negligence *per se*.

## C.  Gross Negligence

Under D.C. law, "gross negligence" implies "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *District of Columbia v. Walker*, 689

---

[4] The notice requirement here also means that Mr. Wise cannot recover on a res ipsa loquitur theory of liability. "[I]n cases in which notice is an essential element of a plaintiff's claim, res ispa loquitur is inapplicable because it is inconsistent with the requirement of notice." *Mixon v. WMATA*, 959 A.2d 55, 60 (D.C. 2008). Mr. Wise's case falls in that category.

A.2d 40, 44 (D.C. 1997). But nonetheless, as with any negligence claim, the plaintiff must still

establish "the applicable standard of care," which is "a base point from which the magnitude of

deviation can be assessed for purposes of the gross negligence inquiry." *Id.* at 45. As discussed

above, because he did not produce expert testimony or prove the government's actual or

constructive notice of the faulty handrail, Mr. Wise has not established the applicable standard of

care. *See supra* Part V.A. Just as he cannot recover on his plain negligence claim, Mr. Wise

likewise cannot recover on his gross negligence claim.

## VI.  CONCLUSION

For the foregoing reasons, the Court finds that Defendant United States is not liable to

Plaintiff James R. Wise for negligence, negligence per se, or gross negligence under the Federal

Tort Claims Act. Final judgment will be entered for Defendant.

Dated:  November 17, 2015                                     RUDOLPH CONTRERAS
                                                             United States District Judge